Filed 9/1/16  P. v. Robbins CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT ROBBINS,<br><br>    Defendant and Appellant. | B268491<br><br>(Los Angeles County<br>Super. Ct. No. TA137604) |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. Eleanor J. Hunter, Judge.  Affirmed.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

On November 5, 2015, a jury convicted defendant Robert Robbins of sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)), a felony, and simple possession of cocaine base (§ 11350), a misdemeanor. The court sentenced defendant to three years six months in county jail.

The facts were these. On July 1, 2015, Officer Saipele Tuialii was one of several police officers assigned to narcotics enforcement who were observing a unit (Unit 97) in a housing development known for drug sales. He and his partner were located at a gas station across the street (Imperial Highway) from Unit 97. Officer Tuialii observed a male, known to some of the officers as Michael Peoples, walking up to Unit 97. Mr. Peoples knocked on the door. The door opened slightly, and Mr. Peoples handed United States currency to the person inside. The door closed for five to 10 seconds, and then reopened, and the person inside gave Mr. Peoples "an off-white solid resembling rock cocaine." Mr. Peoples then walked away. Officer Tuialii was using binoculars and "had a clear view of the front door and the whole transaction."

Officer Tuialii's partner radioed a description and location to other officers, who stopped Mr. Peoples about 50 to 70 yards away from Unit 97. As police were detaining Mr. Peoples, defendant walked out of Unit 97, looked up and down the block, "and continued to monitor as Peoples was being detained." Then defendant walked back inside.

Officer Richard Larson, who knew Mr. Peoples from previous arrests, was one of the officers who detained and arrested him. Officer Larson "told him that we had watched him purchase rock cocaine and it was in his right front pocket. [¶] And he [(Mr. Peoples)] said, 'Okay. You got me.' " Officer Larson's partner recovered the rock cocaine from Mr. Peoples's right front pocket. The rock recovered was tested and found to be cocaine in the form of cocaine base, with a net weight of 0.21 grams.

Police obtained a search warrant for Unit 97 and executed it the following day.

Police approached the rear door of the unit. Officer Edward Kellogg was " 'point,' which means I'm the first guy up with the shotgun." As he approached, "somebody said, 'oh, shit,' and slammed the door on me." (According to Officer Larson,

2

the police "[g]ave knock and notice, demanding entry, advising the occupants that we were there to lawfully serve a search warrant, at which point we received no answer, and we heard the footsteps running inside.")  They believed the occupants "were possibly trying to destroy contraband," and forced entry, using an entry tool to open the outer security door, and then a two-man ram to breach the inner door.

Officer Kellogg entered and heard someone running up the stairs.  There was a bathroom at the top of the stairs.  Officer Kellogg observed defendant standing over the toilet, "holding in his right hand what appeared to be a white DVD case.  With his left hand, he was flushing the toilet.  [¶]  He made eye contact with me and proceeded to slam the [bathroom] door, after I ordered him to get down on the floor."  Officer Kellogg reached the top of the stairs and proceeded to the two bedrooms, as the officers behind him opened the bathroom door and took defendant into custody.  Defendant was the only person present during the execution of the search warrant.

Officer Larson observed an off-white solid resembling rock cocaine on the kitchen counter, and "there was more off-white solids that were recovered from the [bathroom] sink."  These substances, a DVD case, a razorblade on the kitchen floor, and $621 in small denominations were booked into evidence.  The off-white solid with a net weight of 0.019 grams was tested and found to contain cocaine base.  No scale, buyer lists, seller lists, or records of sales were found.

An information filed August 4, 2015, charged defendant with the sale of a controlled substance (cocaine base) in connection with the July 1, 2015 incident (count one, Health & Saf. Code, § 11352, subd. (a)) and possession for sale of cocaine base (count two, § 11351.5) on July 2, 2015, both felonies.

Defendant expressed dissatisfaction with his appointed attorney, and the court held a *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118), at the conclusion of which the motion was denied.

At trial, the prosecution adduced the evidence described above.  In addition, Officer Larson opined, based on a hypothetical reflecting that evidence, that the person detained during execution of the warrant possessed the cocaine for the purposes of sale.

3

Defendant testified in his own defense. He stated that Mr. Peoples was a local gardener, and defendant talked to him on July 1, 2015, about an area with "green gunk" and a bad smell that he wanted fixed. They talked at the front door for "a minute," and Mr. Peoples left to get his tools. Defendant did not sell him cocaine or receive money from him or see him get arrested. Just before the search the following day, defendant was playing a very loud video game; went upstairs to the bathroom to urinate; and did not know the police were in the house until he opened the bathroom door to walk out. He was scared and laid down on the floor as instructed. The $621 was money to pay the rent for July.

Defendant denied there was any cocaine found in the bathroom and denied flushing things down the toilet. He said he "might have had some residue [of cocaine] from the razor," which was "in my bag" and not on the ground. The residue was "[f]rom me chopping it up and putting it on some weed," to smoke. He knew nothing about any other cocaine in the apartment.

Officer Larson testified in rebuttal that on the day of the search he did not smell the odor of marijuana in Unit 97 and did not see in defendant any signs or symptoms of using marijuana mixed with cocaine.

The jury found defendant guilty on count one ("sale/transportation/offer to sell controlled substance"). On count two, the jury found defendant not guilty of possession for sale of cocaine base, but guilty of the lesser included offense of simple possession of cocaine base.

At the sentencing hearing, the court denied defendant's request for probation, observing among other points that defendant had "absolutely, positively lied, without a doubt in this court's mind," and was not a good candidate for probation. The court sentenced defendant to a total term of three years six months in county jail (the low term of three years on count one, and six months on count two). The court ordered 40 days of credits (20 actual custody and 20 conduct credits), and ordered submission of a DNA sample. The court ordered defendant to pay a $300 restitution charge, a $300 parole revocation restitution charge (suspended), a $40 court security charge and a $30 court

4

construction charge.  (The minute order and abstract of judgment show an $80 court operations assessment and a $60 criminal conviction assessment, reflecting the two convictions.)

Defendant filed a timely appeal.

Defendant's appointed counsel filed a *Wende* brief (*People v. Wende* (1979) 25 Cal.3d 436) requesting our independent review of the record.  A declaration from counsel states that counsel advised defendant of her evaluation of the record and intention to file a *Wende* brief; advised him of his right to file a supplemental brief within 30 days; and provided him a copy of the brief and the record on appeal.  No supplemental brief has been filed.

We have reviewed the record on appeal.  We are satisfied that defendant's appointed counsel has fully complied with counsel's responsibilities and that no arguable issues exist.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *People v. Wende, supra,* 25 Cal.3d at p. 441.)

## DISPOSITION

The judgment is affirmed.


                                        GRIMES, J.

WE CONCUR:


            BIGELOW, P. J.



            RUBIN, J.

5